422 F.2d 597
 UNITED STATES of America for the Use of DuKANE CORPORATION, Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Electronic Sound, Incorporated, Great American Insurance Company, Algernon-Blair, Incorporated, Volta Electric Company, Incorporated, Sound and Music, Incorporated, Appellees.
 No. 12726.
 United States Court of Appeals, Fourth Circuit.
 March 3, 1970.
 
 Israel Steingold, Norfolk, Va. (Steingold, Steingold & Chovitz, Norfolk, Va., on the brief), for appellant.
 Joseph A. Leafe and William E. Baggs, Norfolk, Va. (Rixey & Rixey, Edward L. Breeden, III, and Breeden, Howard & McMillan, Norfolk, Va., on the brief), for appellees.
 Before BOREMAN, WINTER and BUTZNER, Circuit Judges.
 BOREMAN, Circuit Judge:
 
 
 1
 This litigation commenced by an action brought under the Miller Act[1] by the United States for the use of DuKane Corporation (hereafter DuKane) against Electronic Sound, Incorporated (hereafter Electronic), Algernon-Blair, Incorporated (hereafter Algernon-Blair) and its surety, United States Fidelity & Guaranty Company (hereafter USF&G), Volta Electric Company, Incorporated (hereafter Volta), and its surety, Great American Insurance Company, and Sound and Music, Incorporated, the last-named defendant not being a party to this appeal. Answers were filed by all defendants except Volta. Algernon-Blair filed cross-claims for indemnity against its subcontractor Volta and Volta's surety, Great American. Great American answered the cross-claim and filed a third-party complaint against two individuals, Garcia and DeAngelo, who had undertaken to indemnify Great American.
 
 
 2
 Certain material facts are preliminarily stated but others will be developed during the discussion of issues and contentions presented on appeal.
 
 
 3
 On April 27, 1964, Algernon-Blair was awarded a general contract by the United States for the construction of a Composite Medical Facility (hereafter "the project") at Langley Field, Virginia, in the amount of $2,788,225.00. Algernon-Blair then awarded a subcontract for electrical work in connection with the project to Volta in the amount of $317,650.00. Volta, in turn, entered into a sub-subcontract with Electronic covering a portion of its electrical subcontract in the amount of $26,123.00 which was later reduced by change orders to $22,680.00.
 
 
 4
 DuKane, the use plaintiff, provided materials to Electronic at the latter's invitation, for which DuKane was not paid, in the amount of $13,893.02. On November 20, 1964, Electronic assigned to DuKane the proceeds of its contract with Volta which assignment was accepted by Volta in writing. The last of the materials supplied by DuKane and for which no payment was made were delivered on December 29, 1965. However, on February 8, 1966, and March 4, 1966, DuKane supplied other materials to the project but each shipment was on a C.O.D. basis and payment therefor was made on delivery.
 
 
 5
 During the process of construction DuKane became concerned about payment as there appeared to be some question about the financial stability of Electronic and Volta. DuKane refused to ship additional materials which had been ordered by Electronic and notified the general contractor, Algernon-Blair, to that effect. On December 3, 1965, Algernon-Blair agreed, by letter, with DuKane that it would see that DuKane was paid for all materials shipped to the project subsequent to that date. Algernon-Blair's letter was as follows:
 
 
 6
 This will confirm our telephone conversation today in which we advised that in consideration for prompt release of the balance of the materials and equipment which Electronic Sound, Inc., has ordered from you for use on this project, we will see that you receive payment for same.
 
 
 7
 As a condition of this arrangement, you are to send us a copy of each invoice involved. (Emphasis added.)
 
 
 8
 The materials shipped subsequent to December 3, 1965, for which DuKane was not paid, amounted to $8,304.30.
 
 
 9
 The assignment to DuKane by Electronic of the latter's contract rights with Volta ($22,680.00) was given to insure payment not only for the materials to be furnished by DuKane to the project but also other materials which had been theretofore furnished to Electronic by DuKane on other projects. In violation of Volta's obligation to make payments to DuKane by virtue of the assignment, Volta paid to Electronic on December 3, 1965, the sum of $4,000.00, and on December 15, 1965, Volta endorsed over to Electronic a check from Algernon-Blair made payable to both Electronic and Volta in the amount of $5,000.00. Electronic used the proceeds of the $5,000.00 check.
 
 
 10
 The case was tried without a jury and the district court rendered its Memorandum Decision containing extensive findings of fact[2] and stating its conclusions of law. A final order was entered in the district court awarding judgment to DuKane against Algernon-Blair and its surety, USF&G, in the amount of $8,304.30, that being the invoice price of the materials delivered after December 3, 1965, the responsibility for payment having been assumed by Algernon-Blair. DuKane was awarded judgment against Great American, surety for Volta, in the amount of $13,893.02, provided, however, that this amount would be reduced by $8,304.30, the amount of DuKane's judgment against Algernon-Blair, if paid by Algernon-Blair or USF&G. Judgment was rendered in favor of DuKane, as assignee of Electronic, against Volta in the amount of $22,893.02, and against Electronic in the amount of $22,680.00. The judgment order further provided that Algernon-Blair recover from Volta, or its surety, Great American, all payments which Algernon-Blair was required to make plus its costs and attorneys' fees, and that Great American recover from Volta and the individual indemnitor, Garcia, all sums which Great American was required to pay to Algernon-Blair, USF&G, or DuKane plus its own costs and attorneys' fees.
 
 
 11
 On this appeal DuKane attacks the holding of the district court with respect to the liability of Algernon-Blair and its surety, USF&G, to DuKane and the holding with respect to the liability of Great American, Volta's surety, by virtue of the assignment to DuKane from Electronic of the latter's claim against Volta. DuKane contends that Algernon-Blair and its Miller Act surety, USF&G, are liable to it under the Act for the full sum of $22,680.00 (Electronic's contract with Volta) plus $13,893.02, the value of materials actually furnished by DuKane to the project (not to exceed, however, $30,855.36, the total amount shown by the evidence as owed to DuKane by Electronic from this and all other projects), either by reason of the assignment from Electronic to DuKane or by reason of Algernon-Blair's letter of December 3, 1965, to DuKane.
 
 
 12
 Pertinent to the consideration and determination of claims of DuKane with respect to rights asserted under the Miller Act are the provisions of 40 U.S.C. § 270b(a) as shown below.[3] The district court held that there was no liability on the part of the general contractor, Algernon-Blair, or its surety, USF&G, to DuKane under the Miller Act since DuKane supplied materials to a sub-subcontractor, Electronic, and, as such supplier, had no contractual relationship with Algernon-Blair, was too remote, too far down the line and had no protected status under the Act;[4] further, that DuKane, "even if it acquired any status under the Miller Act in the shoes of Electronic Sound, Inc., as its assignee," failed to give the notice provided by section 270b (a) of the Act and required to be given to Algernon-Blair within ninety days from the date of delivery of the last materials for which claim is made.[5]
 
 
 13
 Here, the materials furnished by DuKane for which payment was not made amounted to $13,893.02, the last item of which was furnished on December 29, 1965, as found by the district court. DuKane admits that a notice to Algernon-Blair, purportedly given pursuant to the Miller Act, was not given until May 6, 1966, more than 90 days after December 29, 1965. It is true that certain materials were furnished by DuKane on February 8, 1966, and March 4, 1966, but both of these orders were C.O.D., were paid for on delivery, and, therefore, were not part of the materials for which claim is made within the terms and provisions of the Miller Act.
 
 
 14
 DuKane offered evidence at trial that in discussions between principals of Algernon-Blair and DuKane on December 3, 1965, the latter gave notice to Algernon-Blair that it held an assignment from Electronic of the proceeds of its subcontract with Volta. The district court, after reviewing the evidence, found that DuKane had failed to prove that Algernon-Blair had "any such knowledge of such arrangement." Admittedly, no copy of the written assignment was furnished by DuKane to Algernon-Blair until March 7, 1966, and the court concluded that the conduct and actions of DuKane were totally inconsistent with its assertion that Algernon-Blair had notice of the assignment prior to March 7, 1966.
 
 
 15
 As stated, DuKane obtained judgment below against Great American, Volta's surety, in the amount of $13,893.02. Great American does not contest its liability to that extent; in fact, the court noted that Great American had tendered payment into court of that sum but without interest or costs. DuKane was given judgment against Volta in the amount of $22,893.02, which included the $13,893.02 for DuKane's materials furnished for the project and $9,000.00 (the $4,000.00 paid by Volta to Electronic and the $5,000.00 paid by Volta to Electronic through endorsement of Algernon-Blair's check in that amount). The court explained that while this combination of amounts "is slightly in excess of the funds available under the assignment [$22,680.00], nevertheless, the ignoring of the assignment justifies this result."
 
 
 16
 DuKane, however, contends that Great American, as surety on Volta's bond, is liable for the full amount of DuKane's judgment against Volta. As stated by DuKane in its reply brief, "The only dispute between appellant DuKane and Great American is whether Great American should have credit for $9,000.00 given Electronic Sound by Volta after Electronic Sound had assigned the proceeds of its contract with Volta to DuKane."
 
 
 17
 In answering and rejecting this contention the court said:
 
 
 18
 * * * To this contention we cannot agree. The surety payment bond, which is in evidence, executed on May 21, 1964, provides that "* * * the subcontractor [Volta] shall pay all persons who have furnished labor and materials for use in and about the improvements, and shall indemnify and save harmless the contractor from all costs and damage, including court costs and attorney's fees" * * *, etc., and "* * * all persons who have furnished labor or materials for use in or about the improvement shall have a direct right of action under the bond, subject to the contractors' priority." This language limits the surety's liability to labor and materials and it is only for the materials furnished by DuKane Corporation (which furnished no labor) that it is therefore responsible. This was not a general indemnity bond which assured the reliability of Volta in all accounts, for fraud or otherwise.
 
 
 19
 No attempt has been made to show that Great American had knowledge of the assignment aforesaid until it was so advised by DuKane in letters written on June 13, 1966 and June 24, 1966. While there is no question that Electronic Sound might assign its rights against Volta Electric to DuKane, it does not appear that the surety, Great American, could be made liable upon such assignment, as it had no notice thereof and was not a party thereto, and this court so holds.
 
 
 20
 The bond supplied by Volta, with Great American as surety, was a "performance and payment bond" given primarily to secure the prime contractor, Algernon-Blair, in connection with the subcontract of Volta. It contained the provision that all persons who furnish labor or material for use in or about the improvement shall have a direct right of action under the bond, subject to the contractor's priority. Great American admits its liability to pay DuKane for the materials furnished by the latter to the project and the court has awarded judgment in favor of DuKane against Great American for that amount. As the district court stated, this bond was not a general indemnity bond "which assured the reliability of Volta in all accounts, for fraud or otherwise." The court relieved Great American of liability for the $9,000.00 paid by Volta to Electronic which payments should have been made to DuKane by virtue of the assignment.
 
 
 21
 Perceiving no error in the district court's findings of fact and conclusions of law, the judgments below will be
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 40 U.S.C. § 270a et seq., as amended
 
 
 [2]
 The district court's opinion had not been officially reported at the time of this decision. The findings of fact by the district court were approved and accepted by all the parties except that DuKane challenged the correctness of findings numbered 21 and 22 in which it was determined that Algernon-Blair had no notice of the assignment from Electronic to DuKane, finding 22 referring specifically to the time Algernon-Blair made its $5,000.00 check payable jointly to Volta and Electronic. The district court found as facts that Electronic fully performed its subcontract with Volta and that Great American, surety under the payment bond of Volta, had no notice of Electronic's assignment to DuKane and Volta's approval of the assignment. We accept the district court's findings as supported by the evidence and we cannot say that they are clearly erroneous. Rule 52(a), Fed.R.Civ.P
 
 
 [3]
 40 U.S.C. § 270b(a) provides that:
 Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, * * *. (Emphasis of the language "for which such claim is made" supplied.)
 
 
 [4]
 Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)See also Elmer v. United States Fidelity & Guaranty Co., 275 F.2d 89 (5 Cir. 1960).
 
 
 [5]
 The district court posed the following question: "Does the assignment from Electronic Sound, Inc., to DuKane Corporation do anything to improve DuKane's Miller Act posture?" In answer thereto the district court stated:
 The United States Fourth Circuit Court of Appeals, in affirming a decision originating in the Eastern District of Virginia, in United States for Use and Benefit of the Henry Walke Co. v. Van de Reit, 316 F.2d 912 (4th Cir. 1963), held that an assignment from a subcontractor to the materialman of money proceeds of his subcontract, even where such assignment was acknowledged by the general contractor, did not create a contract expressed or implied between the materialman and the general contractor within the meaning of the Miller Act which would be sufficient to dispense with the 90 days' notice required by the Act.
 Hence, even if we were to find, which we expressly do not, that Algernon-Blair, Inc. had knowledge of the assignment from Electronic Sound, Inc. to DuKane Corporation, dated November 20, 1964, we would nevertheless be bound to find that such assignment did not create any direct contract between DuKane Corporation and Algernon-Blair, Inc. as would do away with the 90 days' notice requirement under § 270b(a) of the Miller Act.
 And furthermore, were we to find, which we expressly do not, that such assignment of November 20, 1964, between Electronic Sound, Inc. and DuKane Corporation, consented to by Volta Electric Company, Inc., created a "direct contractual relationship" between DuKane and a subcontractor (Volta Electric Company, Inc.) as would give DuKane Corporation a Miller Act standing under § 270b(a) of that Act provided 90 days' notice was given, we would nevertheless be bound to find that such notice as is required in that section has not been given.