930

The UNITED STATES of America for the Use and Benefit of OLMSTED ELECTRIC, INC., a corporation, Plaintiff-Appellee,

v.

NEOSHO CONSTRUCTION COMPANY, INCORPORATED and the Travelers Indemnity Company, Defendants-Appellants.

No. 77–1881.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 14, 1978.

Decided May 31, 1979.

John L. Richeson, Ottawa, Kan. (Anderson, Byrd & Richeson, Ottawa, Kan., on brief), for plaintiff-appellee.

Larry G. Pepperdine, Topeka, Kan. (Fisher, Patterson, Sayler & Smith, Topeka, Kan., and David H. Heilman, Council Grove, Kan., on brief), for defendants-appellants.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a Miller Act case and the issue is whether the supplier gave timely notice to a general contractor of its claim against a subcontractor. The supplier brought suit against the general contractor and its surety under the provisions of the Miller Act for materials which it had furnished a subcontractor and for which payment had not been received. Both the supplier and the general contractor moved for summary judgment.

It was the general contractor's position that, under the undisputed facts, the supplier's action was barred because of the failure of the supplier to give timely notice as required by 40 U.S.C. § 270b(a). It was the supplier's position that it had given the general contractor the notice required by that statute. The trial court granted the supplier's motion for summary judgment and denied the motion of the general contractor. Judgment was then entered in favor of the supplier and against the general contractor and its surety in a stipulated amount. The general contractor and its surety seek reversal of that judgment.

Neosho Construction Company entered into a contract with the Corps of Engineers whereby Neosho, as the general contractor, agreed to construct certain projects at Melvern Lake, in Kansas. Neosho, as the principal, and Travelers Indemnity Company, as surety, executed a payment bond to the United States.

Neosho entered into a subcontract with Donald Eugene Masten whereby Masten agreed to perform certain electrical work on the Melvern project. Masten, in turn, over a considerable length of time, purchased electrical supplies for the project from Olmsted Electric, Inc. Specifically, Olmsted's first sale of materials to Masten for use on the Melvern job was on September 24, 1973. Periodic purchases were made and periodic payments were made from September, 1973, until September, 1974, so that, as of September, 1974, Masten's account with Olmsted was current. However, between August 30, 1974, and April 18, 1975, Olmsted made some fourteen sales to Masten of electrical supplies which were used on the Melvern Lake project, and for which Olmsted did not receive payment.

Sometime in June, 1975, Masten ordered a "fuse disconnect" from Olmsted which was to be used on the Melvern project. Olmsted in turn placed an order for a fuse disconnect from its manufacturer. It would appear that Masten was experiencing severe financial problems and that at about this point in time apparently ceased working on the Melvern Lake project. Masten later took bankruptcy. Be all that as it may, on July 21, 1975, one Ron Montieth, an employee of Neosho, in a telephone conversation with Lee Olmsted, President of Olmsted Electric, Inc., verified that the fuse disconnect had in fact been ordered by Masten, and inquired about the possible delivery date for the disconnect.* As a follow-up to their telephone conversation, Lee Olmsted wrote Ron Montieth on that same day, stating that he would call Montieth when the disconnect was received. In that same letter, Olmsted advised Montieth that, as of that date, Masten owed Olmsted $26,065.23 and acknowledged that Montieth had told him that Neosho had paid Masten in full.

By letter of July 28, 1975, Montieth replied to Olmsted's letter of the 21st. In that reply, Montieth stated that "[t]he purpose of my telling you that Don Masten was not due any money from Neosho Construction Company, Inc., was to warn you so that you could prevent the possible over extension of credit to Don's Electric Service." In that same letter, Montieth also stated that Neosho was not assuming any liability for Masten's indebtedness to Olmsted and asked that he be advised as soon as the fuse disconnect was received.

On August 13, 1975, a Neosho employee picked up the fuse disconnect at Olmsted's shop. The sales slip for the disconnect was made out to Neosho, and about a week later Neosho paid Olmsted the sum of $332.50, the amount of the invoice covering the disconnect.

On September 24, 1975, Olmsted gave Neosho notice under 40 U.S.C. § 270b(a). That statute provides as follows:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and

---

* This telephone call from Ron Montieth to Lee Olmsted was the *first* contact between Neosho Construction Co. and Olmsted Electric.

who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That *any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person* did or performed the last of the labor or *furnished or supplied the last of the material for which such claim is made,* stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons. (Emphasis added.)

■ Paraphrasing the statute above quoted, a supplier or materialman who has a contractual relationship with a subcontractor but none with the prime contractor, shall have a right of action on the payment bond for his claim against the subcontractor *provided* he gives written notice in the manner described in the statute within ninety days from the date the supplier furnished or supplied the last of the material for which such claim is made. As above noted, Olmsted gave written notice to Neosho on September 24, 1975. Attached to the notice was a ledger sheet reflecting deliver-ies of materials by Olmsted to Masten for which payment had not been made. According to that ledger sheet, the last material furnished by Olmsted to Masten for the Melvern Lake project for which claim was being made occurred on April 18, 1975. Hence, notice was not given within ninety days from April 18, 1975, the date on which Olmsted supplied the last material on the project for which claim was being made. This failure to comply with the ninety-day requirement of § 270b(a) was the basis for Neosho's motion for summary judgment.

■ It was Olmsted's position in the trial court, as here, that the delivery of the fuse disconnect on August 13, 1975, even though such delivery was to Neosho and was paid for by Neosho, triggered the start of a new ninety-day period, and that the notice of September 24, 1975, which was well within ninety days from August 13, 1975, constituted compliance with § 270b(a). The trial court agreed with Olmsted's position, and granted summary judgment in its favor. In so doing the trial court in our view misapplied the law to the admitted facts.

The trial court in its memorandum and order recognized that there was not literal compliance by Olmsted with the provision of § 270b(a) requiring notice within ninety days of the date on which Olmsted supplied "the last of the material for which such claim [was] made." The date when Olmsted last supplied materials for the Melvern Lake project for which claim was being made was April 18, 1975. However, the trial court reasoned that it was unfair to allow Neosho "to wipe out an entire year's worth of Miller Act claims simply by paying the tab" on the delivery of the fuse disconnect on August 13, 1975. In this general regard it should be emphasized, however, that there is nothing in the record to indicate deception or manipulation by Neosho in its picking up of the fuse disconnect on August 13, 1975. Nor does Olmsted suggest that such is the case. Rather, on July 21, 1975, Ron Montieth, a Neosho employee, called Olmsted to make certain that a fuse disconnect had been ordered. From the

correspondence between Montieth and Lee Olmsted, which occurred within a few days after their telephone conversation, it is quite apparent that Montieth informed Olmsted that Neosho had already paid Masten in full and that Neosho disavowed any liability for Masten's indebtedness to Olmsted. It was in this setting that, on August 13, 1975, Olmsted delivered the fuse disconnect to Neosho and billed Neosho by a sales slip made out to Neosho, which the latter promptly paid. This is not an instance where Neosho in any way misled Olmsted or rushed in to "pick up the tab," thereby hoping to defeat a Miller Act claim.

The cases relied on by the trial court in holding that notice had been given in the manner prescribed by § 270b(a) are not persuasive. In *United States ex rel. General Electric Supply v. Harry Hershson Co.*, 52 F.Supp. 832 (S.D.N.Y.1943), the only delivery made within ninety days prior to sending notice to the general contractor was a delivery to the general contractor, as is true in the present case. However, there is nothing in *Hershson* to indicate that the general contractor had paid for the last delivery *prior* to receiving notice from the materialman, which was done in the present case. Presumably, then, when the materialman in *Hershson* gave notice he included a claim for the delivery which he had made to the general contractor.

The only other case cited by the trial court in support of its holding that the August 13 delivery could be considered in determining timeliness of notice is *United States ex rel. Industrial Lumber Co., Inc. v. F. D. Rich Co., Inc.*, 473 F.2d 720 (9th Cir. 1973), *rev'd in part on other grounds*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). In *Rich* the Ninth Circuit was faced with the question of whether an agreement by the prime contractor to pay the supplier directly, rather than through a subcontractor, for the last two of a number of shipments precluded consideration of those two shipments as the " 'last material for which claim is made' " to establish timeliness of the Miller Act notice. The Ninth Circuit held that such agreement by the prime contractor did not preclude such consideration.

However, in *Rich*, as in *Hershson*, there is nothing in the opinion which indicates that the prima contractor had in fact paid for the last deliveries prior to receiving notice from the supplier.

Cases more directly in point are *United States ex rel. Harris Paint Co. v. Seaboard Surety Company*, 437 F.2d 37 (5th Cir. 1971) and *United States ex rel. Dukane Corp. v. United States Fidelity & Guaranty Co.*, 422 F.2d 597 (4th Cir. 1970). In *Seaboard Surety* the Fifth Circuit held that where a supplier did not give notice to the prime contractor of subcontractor's unpaid bills until more than ninety days after the last of such materials was furnished the subcontractor, the supplier did not have a right of action on the prime contractor's payment bond even though the prime contractor purchased and used materials from the supplier in completing the subcontractor's job and notice was given within ninety days of the last delivery to the prime contractor. It would appear that in *Seaboard Surety*, as in the instant case, the prime contractor paid for the materials delivered to him prior to receiving the Miller Act notice.

In *United States ex rel. Dukane Corp. v. United States Fidelity & Guaranty Co.*, 422 F.2d 597 (4th Cir. 1970), the Fourth Circuit held that materials which were paid for on delivery at the job site were not "materials *for which claim is made* within the terms and provisions of the Miller Act." 422 F.2d at 600. The date of delivery of such materials could therefore not be considered in determining whether timely notice had been given the general contractor pursuant to § 270b(a).

We do not regard our disposition to be at odds with *T. F. Scholes, Inc. v. United States ex rel. Lock Joint Pipe Co.*, 297 F.2d 337 (10th Cir. 1961). In *Scholes* the subcontractor ordered 1095 feet of 30-inch pipe to be used on the "Old Hardeman Job." After some 800 feet of pipe had been furnished, the subcontractor was removed from the project. Thereafter, some person, presumably an employee of the prime contractor, called the supplier of the pipe and ordered

198 feet of the pipe for the "Old Hardeman Job." The additional pipe was furnished and the invoice therefor was eventually sent to the prime contractor. The supplier then gave notice to the prime contractor that he was looking to it for the entire balance due on pipe delivered to the Hardeman job. In *Scholes* we specifically observed that such notice was given "[p]rior to receiving payment for any of the materials furnished . . . ." 297 F.2d at 338. Thus, in *Scholes*, notice was given at a point in time when the supplier was in fact making claim for the delivery which he had made to the prime contractor under a contract which the supplier had previously made with the subcontractor. *Scholes* is not the present case. Here Olmsted is not making claim for the delivery of the fuse disconnect to Neosho on August 13, 1975. The delivery date of the last material for which Olmsted is making claim was April 18, 1975, and notice to Neosho was not given within ninety days thereafter. Under the circumstances, then, the trial court erred in granting summary judgment for Olmsted and it should have entered summary judgment for Neosho.

Judgment reversed and cause remanded with direction that summary judgment be entered for Neosho.

LOGAN, Circuit Judge, dissenting:

I would affirm on the basis of and for the reasons stated in the trial court's memorandum opinion.

As the majority opinion is written, the only ways Olmsted Electric could have protected itself are as follows:

1) It could have refused to accept payment for the fuse disconnect from Neosho, and insisted that it be billed to the subcontractor which ordered it. This seems to me to put too much emphasis upon knowledge by the supplier of our possible very technical reading of the Act.

2) Olmsted Electric might have had a policy to automatically send out a Miller Act notice whenever it appears from the accounts that it is close to ninety days since it was last paid by the subcontractor. Here

within the ninety-day period it had received another order from the subcontractor for the fuse disconnect. I think the supplier reasonably expected that it would have additional time under the Miller Act notice requirements to ensure payment of its claim.