976 F.2d 1274
 24 Fed.R.Serv.3d 584, 18 UCC Rep.Serv.2d 696
 UNITED STATES of America ex rel. BARTEC INDUSTRIES, INC.,
Plaintiff-Appellee-Cross-Appellant,
v.
UNITED PACIFIC COMPANY, dba United Pacific Reliance Company,
Defendant-Appellant-Cross-Appellee.
and
KAUAI BUILDERS, INC., Defendant-Third-party Plaintiff,
v.
SIMPSON-IRVINE, a joint venture organized in the State of
California; Federal Insurance Company, a New
Jersey corporation, Third-party
Defendants-Cross-Appellees.
and
SIMPSON-IRVINE, a joint venture, Fourth-party Plaintiff-Cross-Appellee,
v.
BARTEC INDUSTRIES, INC., Fourth-party Defendant-Cross-Appellant.
 Nos. 91-15805, 91-15935.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 17, 1992.
Decided Oct. 6, 1992.
 
 Craig E. Guenther, Booth, Mitchel & Strange, Costa Mesa, Cal., for defendant-appellant-cross-appellee United Pacific Ins. Co.
 Alexander C. Marrack, Reinwald, O'Connor, Marrack, Hoskins, & Playdon, Honolulu, Hawaii, for plaintiff-appellee-cross-appellant Bartec Industries, Inc.
 Patrick J. Duffy, argued and briefed, Lawrence P. Yellin, Monteleone & McCrory, Universal City, Cal., for cross-appellee Simpson-Irvine.
 Appeal from the United States District Court for the District of Hawaii.
 Before: WALLACE, Chief Judge, and GOODWIN and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 This Miller Act[1] case arises from a dispute over miscast and lost steel to be used in the construction of a hangar and office building for the United States Navy. The steel supplier asserts that the district court erroneously denied it full recovery of the balance on its contract, while the contractor's surety asserts that the steel supplier should collect nothing. The steel supplier also seeks its costs and prejudgment interest. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part the district court's judgment.
 
 FACTS
 
 2
 Kauai Builders (Kauai) contracted with the United States Navy to construct a hangar and office building at the Pacific Missile Range facility, Barking Sands, on the island of Kauai, Hawaii. Kauai's surety, defendant-appellant/cross-appellee United Pacific Company (United) issued a payment bond to Kauai as principal guaranteeing payment to suppliers for any materials furnished for use in construction of the project. Third-party defendant/fourth-party plaintiff/cross-appellee Simpson Irvine (Simpson) was Kauai's subcontractor on the Barking Sands project. It was responsible for erecting the structural steel in the hanger and office building. Third-party defendant/cross-appellee Federal Insurance Company, Simpson's surety, issued performance and payment bonds to Simpson. Simpson contracted with plaintiff-appellee/cross-appellant Bartec Industries, Inc. (Bartec) to fabricate and supply the necessary steel.
 
 
 3
 The Simpson-Bartec subcontract required Bartec to deliver the steel F.O.B. to the Barking Sands job site. The subcontract also required Bartec to deliver the steel within certain specified time periods and to fabricate and mark the steel according to specified conditions. Bartec, however, did not flawlessly manufacture all of the necessary steel. Some of it was misfabricated, incorrectly marked, and/or unpainted. Nor did all of the steel fabricated at Bartec's plant on the mainland safely arrive at Barking Sands. Several beams of steel entrusted to Matson Navigation Company (Matson) for sea transport to Hawaii were damaged and twelve beams were lost at sea during a storm. Simpson repaired the damaged steel at a cost of $139,401 and replaced the lost steel at a cost of $37,933. The accident at sea and the mistakes made by Bartec during fabrication delayed construction of the hangar and office building.
 
 
 4
 Before the storm and the subsequent damage and loss of the steel, Simpson directed Bartec to deliver the quantity of steel that exceeded the subcontract's freight cost allowance to a Los Angeles dockyard. Shortly thereafter Simpson determined that shipment by barge to Hawaii was too slow and too costly and asked Matson to remove the steel from the dockyard and ship it via the Matson vessel Manukai. Bartec contended that Simpson took delivery of the steel at the Los Angeles dockyard and asked Simpson for payment when the shipment was damaged and/or lost. Simpson responded by asking Bartec to file a claim with Matson for the ill-fated shipment and threatened to withhold payment if that was not done. Both Simpson and Bartec then filed separately the necessary claim against Matson, who in turn paid Simpson $172,835.31 for the damaged steel. Matson also agreed to pay Simpson $50,063 for the lost beams.
 
 
 5
 Bartec filed this suit in the district court of Hawaii against United Pacific when payment from Simpson for the steel it fabricated was not forthcoming. Bartec sought damages of $190,258.54, which did not include the value of the steel beams lost at sea. Kauai intervened and filed a third-party complaint against Simpson and Federal. Simpson responded by filing a fourth-party complaint against Bartec for costs incurred in remediating damages and losses to the steel shipment, and Bartec counterclaimed against Simpson and cross-claimed against Federal.
 
 
 6
 The district court held that Bartec should recover $96,349.54, which represented the balance due on Bartec's contract with Simpson less $93,909, the value of the lost steel. The court did not deduct from Bartec's recovery $139,401--the cost incurred by Simpson to repair the defective steel shipped by Bartec--because Simpson received $172,835 from Matson and its insurer. United Pacific filed a timely notice of appeal on April 25, 1991, and Bartec filed its timely notice of a cross-appeal on May 14, 1991.
 
 DISCUSSION
 
 7
 United and Simpson argue that the district court improperly declined to reduce Bartec's recovery by the cost of correcting the defective steel shipped to Barking Sands. They assert that Bartec should recover nothing because the insurance proceeds paid to Simpson cannot be credited to United as surety for Kauai. Bartec asserts that the district court incorrectly determined the value of the lost steel and that it is entitled to prejudgment interests and costs. Bartec also asks the court to award it double costs and attorney fees as a sanction of United for bringing this appeal.
 
 A. Value of Lost Steel
 
 8
 The amount of damages awarded in a Miller Act case is a finding of fact, reviewable by this court for clear error. United States ex rel. Morgan & Son Earth Moving, Inc. v. Timberland Paving & Constr. Co., 745 F.2d 595, 599 (9th Cir.1984). We would affirm the calculations of the district court without further comment were it not for Bartec's argument that the balance due it could be reduced only by Simpson's cost of "cover."
 
 A buyer of goods may
 
 9
 cover by making in good faith and without unreasonable delay a[ ] reasonable purchase of ... goods in substitution for those due from the seller. The buyer may recover from the seller as damages the difference between the cost of "cover" and the contract price together with any incidental or consequential damages ... less expenses saved in consequence of the seller's breach.
 
 
 10
 Cal.Com.Code § 2712(1), (2) (West 1964 and 1992 supp.). Thus, if Simpson is a buyer of goods, the unpaid balance on its contract with Bartec should have been reduced only by the amount actually paid by Simpson to replace the lost steel--$37,933.
 
 
 11
 A "good" under the California Commercial Code is a "thing[,] including specially manufactured [items], which [is] movable at the time of identification to the contract for sale other than ... things in action". Cal.Com.Code § 2105 (West 1964). Here, the contract involved more than the ordinary sale of an item. The Simpson-Bartec contract involved both the sale of the steel and the provision of some services. Bartec agreed to specially fabricate and custom paint the beams for the Barking Sands project. But this does not mean that the California Commercial Code does not apply. See United States v. City of Twin Falls, Idaho, 806 F.2d 862, 871 (9th Cir.1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); United States ex rel. Union Building Materials Corp. v. Haas & Haynie Corp., 577 F.2d 568, 572 n. 2 (9th Cir.1978).
 
 
 12
 To determine whether the Simpson-Bartec contract involved the sale of a "good," we look to the "essence of the agreement." Filmservice Laboratories, Inc. v. Harvey Bernhard Enters., Inc., 208 Cal.App.3d 1297, 1305, 256 Cal.Rptr. 735, 739 (1989); RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 546 (9th Cir.1985).
 
 
 13
 The test for inclusion or exclusion is not whether the[ ] [sales and service components] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved ... or is a transaction of sale, with labor incidentally involved....
 
 
 14
 Twin Falls, 806 F.2d at 871 (quoting Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir.1974)).[2]
 
 
 15
 We believe that the "predominant factor, thrust, and purpose," Twin Falls, 806 F.2d at 871, of the Simpson-Bartec contract was the provision of the steel beams. The special fabrication and painting were incidental to Simpson's main reason for entering into the agreement with Bartec--to obtain steel to construct the structural framework of the hangar and office building. Bartec did not agree to perform any labor at the Barking Sands site or to assist Simpson in any way with the construction of the hangar and office building structures. See Freeman v. Shannon Constr. Co., 560 S.W.2d 732 (Tex.Civ.App.1977) (no contract to sell goods where steel supplier agreed to erect structure and fabricate the material to be used in doing so); Schnectady Steel Co. v. Bruno Trimpoli Gen. Constr. Co., 43 App.Div.2d 234, 350 N.Y.S.2d 920 (same), aff'd, 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974). We agree with the courts that have held that similar contracts to supply steel for a construction project, but which did not include provisions for assisting in the actual construction of the project for which the steel was manufactured, are governed by the Uniform Commercial Code. See Standard Structural Steel Co. v. Debron Corp., 515 F.Supp. 803 (D.Conn.1980), aff'd without opinion, 657 F.2d 265 (2d Cir.1981); Belmont Indus., Inc. v. Bechtel Corp., 425 F.Supp. 524 (E.D.Penn.1976); U.S. Fidelity & Guaranty Co. v. North American Steel Corp., 335 So.2d 18 (Fla.App.1976); Port City Constr. Co. v. Henderson, 266 So.2d 896 (Ala.App.1972).
 
 
 16
 Because the Simpson-Bartec contract was a contract for the sale of goods under the Code and the parties do not dispute that Simpson obtained replacement steel at a cost of $37,933, that figure should have been the value deducted from the balance due Bartec. Accordingly, we hold that the district court clearly erred in fixing Bartec's damages.
 
 B. Insurance Proceeds
 
 17
 United vociferously asserts that it was improper to hold it responsible for the proceeds paid Simpson by Matson as compensation for the lost steel. We disagree.
 
 
 18
 "The Miller Act is highly remedial and [is] entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 124, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974) (internal quotation marks omitted). Accordingly, we have explained that a material supplier will prevail on a Miller Act claim against a contractor's bondholder if:
 
 
 19
 (1) the materials were supplied in prosecution of the work provided for in the contract;
 
 
 20
 (2) he has not been paid;
 
 
 21
 (3) he had a good faith belief that the materials were intended for the specified work; and
 
 
 22
 (4) the jurisdictional requisites were met.
 
 
 23
 United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 761 (9th Cir.1984) (citing United States ex rel. Carlson v. Continental Cas. Co., 414 F.2d 431, 433 (5th Cir.1969)), cert. denied, 474 U.S. 817, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985). The parties do not dispute that Bartec met all of these requirements with respect to the misfabricated steel.[3]
 
 
 24
 However, United argues that Kauai (and in turn itself, as Kauai's surety) are entitled to a set-off for Simpson's cost to remedy the misfabricated and incorrectly painted steel. United asserts that, if this set-off were provided, Bartec would be entitled to no damages at all since its unpaid contract balance would be exceeded by those costs. Unfortunately for United, the set-off defense is allowed only where the material supplier is in a direct contractual relationship with the counter-claiming party. Avanti Constructors, 750 F.2d at 762 (citing cases). Here, Bartec agreed to provide steel to Simpson in a contract to which Kauai was not a party. Thus, United as Kauai's surety is not entitled to a reduction in its liability to Bartec on the grounds that Simpson had to remediate certain defective steel beams.
 
 
 25
 United, however, has one more arrow in its quiver. It argues alternatively that it is unjust to "credit" it with the monies received by Simpson from Matson as compensation for the lost steel. To support this assertion United cites United States ex rel. DuKane Corp. v. United States Fidelity & Guaranty Co., 422 F.2d 597, 601 (4th Cir.1970), and Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55 (5th Cir.1967). We do not think these cases help United's cause.
 
 
 26
 In DuKane, a sub-subcontractor assigned to its supplier the right to obtain contract proceeds from the subcontractor. The subcontractor acknowledged and agreed to the assignment but then later paid proceeds due the sub-subcontractor to the sub-subcontractor and not the supplier. The Fourth Circuit held that the subcontractor's surety, who was not a party to the assignment and not aware of it, was not responsible to the supplier for the misappropriated payments because the surety's bond did not "assure[ ] the reliability of [the subcontractor] in all accounts, for fraud or otherwise." 422 F.2d at 601 (emphasis added). The same limits on the surety's bond are present in this case, and unlike the surety in DuKane, here Bartec has not asked United to pay on its bond twice. At the time Matson paid Simpson the insurance proceeds United had not yet paid Bartec for the balance due on the Simpson-Bartec contract. We think this fact suffices to distinguish DuKane. See United States ex rel. Olmsted Elec., Inc. v. Neosho Constr. Co., 599 F.2d 930, 933 (10th Cir.1979).
 
 
 27
 In Graybar, the contractor issued the subcontractor three checks for payment of the material supplier's contract balance. The checks were then endorsed to the materials supplier, who in turn endorsed them back to the subcontractor. The materials supplier did this pursuant to an agreement with the subcontractor that was not known to the contractor. In essence, the materials supplier misrepresented the balance due on its contract with the subcontractor as a means of helping the subcontractor obtain a larger "progress payment" than it would have otherwise received under the subcontractor's unique arrangement with the contractor.
 
 
 28
 Bartec does not seek recovery of amounts beyond the scope of United's general indemnity bond and no funds have been misappropriated without United's knowledge. Thus, Graybar is readily distinguishable. See United States ex rel. General Elec. Supply Co. v. Wiring, Inc., 646 F.2d 1037, 1039-40 (5th Cir.1981), overruled on other grounds, Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); cf. United States ex rel. Krupp Steel Prods. Co. v. Aetna Ins. Co., 831 F.2d 978, 982-83 (11th Cir.1987) (Graybar rule applies where supplier has negligently or fraudulently allocated funds received in payment on contract from general contractor).
 
 
 29
 Bartec seeks only the amount due it on its contract with Simpson at the time this lawsuit was filed. That is the amount it is permitted under the statute. See 40 U.S.C. § 270b. Furthermore, no "absurd" result occurs if United is credited with the Matson payment to Simpson because Simpson and Federal have agreed to indemnify United for any damages that might be held owed to Bartec. Thus, United and Simpson can sort out the amount of the proceeds attributable to Bartec's misfabrication and the amount attributable to delays at a later time and by some method of their own choosing. By contrast, "absurd" results would occur were we to hold otherwise, for then Bartec would receive no compensation for any of the steel received by Simpson in a defective condition. Furthermore, Simpson would retain a windfall, since the proceeds paid it by Matson and which would then not be owed to United as indemnification included sums to compensate for delays which, the district court found, were partially caused by Simpson.
 
 C. Pre-judgment Interest
 
 30
 Bartec contends that the district court improperly failed to award it pre-judgment interest. We review the district court's decision in this regard for an abuse of discretion. Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 794 (9th Cir.1986). Allowance of pre-judgment interest to a Miller Act plaintiff is an issue of federal law. However, since the Miller Act says nothing about interest, we "look to state law as a matter of convenience and practicality." United States ex rel. Yonker Constr. Co. v. Western Contracting Corp., 935 F.2d 936, 941 (8th Cir.1991) (quoting United States ex rel. Georgia Elec. Supply Co. v. United States Fidelity & Guaranty Co., 656 F.2d 993, 997 (5th Cir.1981) (internal quotation marks omitted), disapproved on other grounds, West Virginia v. United States, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987)); see also Morgan, 745 F.2d at 599.
 
 
 31
 Under California law prejudgment interest is available if the damages awarded are "certain, or capable of being made certain by calculation." Cal.Civ.Code § 3287(a) (West 1970). Where the parties dispute only the question of ultimate liability and not the amount of damages that may be awarded, prejudgment interest can be obtained; otherwise, it is not available. See Adams v. Johns-Manville Corp., 876 F.2d 702, 710 (9th Cir.1989) (quoting Esgro Cent., Inc. v. General Ins. Co. of America, 20 Cal.App.3d 1054, 1060, 98 Cal.Rptr. 153, 157 (1971)); Canavin v. Pacific Southwest Airlines, 148 Cal.App.3d 512, 524, 196 Cal.Rptr. 82, 89 (1983) (prejudgment interest not available if parties dispute "relevant elements" by which damages must be computed).
 
 
 32
 Here the parties disputed whether the costs of replacement of the lost steel was proper and whether United was entitled to an offset for the proceeds paid Simpson. Under those circumstances we cannot find that the district court abused its discretion in declining to award prejudgment interest.
 
 D. Costs
 
 33
 The district court directed that each party would bear its own costs. Bartec asserts that it should have been awarded its costs. We review the district court's decision to hold the parties responsible for their own costs for an abuse of discretion. Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir.1988). However, since Fed.R.Civ.P. 54(d) entitles the prevailing party to its costs unless the district court otherwise directs, the district court should have explained why costs were denied Bartec. See Transcontainer Services (Basel) A.G. v. Security Forwarders, Inc., 752 F.2d 483, 488 (9th Cir.1985) (citing Subscription Television Inc. v. Southern California Theatre Owners Assoc., 576 F.2d 230, 234 (9th Cir.1978)). On remand the district court should provide such an explanation.
 
 E. Attorney Fees
 
 34
 Pursuant to Fed.R.App.P. 38, Bartec asks us to award it double costs and attorney fees as a sanction for a frivolous appeal. We will award sanctions if "the result is obvious or the ... arguments are wholly without merit." Glanzman v. Uniroyal, Inc., 892 F.2d 58, 61 (9th Cir.1989) (quoting McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981)). This appeal cannot be so characterized, and we therefore decline Bartec's invitation to sanction United.
 
 CONCLUSION
 
 35
 The judgment is AFFIRMED IN PART and REVERSED IN PART and REMANDED for calculation of Bartec's damages and an explanation why costs were not awarded.
 
 
 
 [1]
 40 U.S.C. §§ 270a-d
 
 
 [2]
 Contrary to Simpson's (and United's) argument, Aced v. Hobbs-Sesack Plumbing Co., 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897 (1961), and Varco-Pruden, Inc. v. Hampshire Constr. Co., 50 Cal.App.3d 654, 123 Cal.Rptr. 606 (1975), do not hold that the California Commercial Code is inapplicable where the dispute involves a construction contract. Aced and Varco-Pruden hold only that contracts for the construction of a completed improvement are not contracts for the sale of goods
 
 
 [3]
 Because the lost steel was never delivered to the Barking Sands project site the district court held that Bartec could not recover the portion of the contract balance attributable to those beams. That holding is not disputed on this appeal