# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                    Elisabeth A. Shumaker
Clerk                                                                      Chief Deputy Clerk

April 30, 1997


**TO:**   All recipients of the captioned opinion

**RE:**   96-6015, Towerridge Inc. v. T.A.O. Inc.
          April 15, 1997


Please be advised of the following correction to the captioned decision:

The identification of the attorneys for Defendants-Appellants and Cross-Appellees is incorrect.  The identification should read as follows:

Charles E. Raley (W. Drew Mallender with him on the briefs) of Watt, Tieder & Hoffar, L.L.P., McLean, Virginia, for Defendants-Appellants and Cross-Appellees.

Please make the appropriate correction.

Very truly yours,

Patrick Fisher, Clerk



Susie Tidwell
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

APR 15 1997

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TOWERRIDGE, INC., sued as United States of
America for the Benefit of Towerridge, Inc.,

Plaintiff-Appellee and Cross-Appellant,

v.

T.A.O., INC., and MID-CONTINENT CASUALTY
CO.,

Defendants-Appellants and Cross-Appellees.

Nos. 96-6015 &
96-6107

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-95-42BL)**

Patsy H. Brown (Michael L. Loyd with her on the briefs) of Michael L. Loyd &
Associates, Bethany, Oklahoma, for Plaintiff-Appellee and Cross-Appellant.

Charles E. Raley (W. Drew Mallender with him on the briefs) of Watt, Tieder &
Hoffar, L.L.P., McLean, Virginia, for Defendants-Appellants and Cross-
Appellees.

Before **BALDOCK, BRORBY** and **MURPHY**, Circuit Judges.

**BRORBY**, Circuit Judge.

**I. BACKGROUND**

This action was brought by Towerridge, Inc., a subcontractor on a federal construction project, against the prime contractor, T.A.O., Inc., and T.A.O.'s surety on the prime contract, Mid-Continent Casualty Company.  Towerridge sued under the Miller Act, 40 U.S.C. §§ 270a-270d (1994), seeking recovery for sums allegedly due and owing under its subcontract.  The jury awarded Towerridge $56,963.94 in damages and, in response to a special interrogatory, found T.A.O. acted in bad faith.  The district court entered judgment accordingly, and later awarded Towerridge prejudgment interest and attorneys' fees.  T.A.O. appeals the award of damages, the award of prejudgment interest, and the award of attorneys' fees.  It also appeals the district court's admission into evidence of references to a separate action between T.A.O. and the government.  Towerridge cross-appeals the district court's failure to note the jury's finding of bad faith on its entry of judgment.  We reverse the district court's award of attorneys' fees and affirm the district court on all other issues.

T.A.O. was the prime contractor on a construction project for the Oklahoma Air National Guard in Oklahoma City.  Because the project was federally funded, T.A.O. was required under the Miller Act to post a payment bond to protect

subcontractors and materialmen.[1]  Co-defendant Mid-Continent Casualty Co. was the surety on the bond.

Under the prime contract, T.A.O. submitted monthly payment applications to the government.  These payment applications stated the scheduled value of each of sixty-nine line-item tasks which made up T.A.O.'s obligations under the contract, the sum of which equaled the contract price.  The applications also provided estimated percentages of completion of both the actual line item tasks and their scheduled values.  Upon receipt of the applications, the government paid T.A.O. the percentage of scheduled values completed, minus a retainage due upon completion of the project.

Towerridge subcontracted with T.A.O. to perform most of the concrete and asphalt paving work for the project.  The total subcontract price was $448,520.00.  The subcontracted work was broken down into four line items:  (1) concrete paving, dowels and sawing, (2) curb and gutter, (3) sealant, and (4) rock and

---

[1]  The Miller Act thus provides an alternative remedy to the mechanics' liens ordinarily available on private construction projects.  *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1537 n.1 (10th Cir. 1987).  Because a lien cannot attach to federal property, those supplying labor or materials are instead protected by the payment bond.  *Id.*

asphalt. The subcontract assigned each line item a scheduled value representing its proportionate value of the whole; thus the sum of the scheduled values equaled the subcontract price. T.A.O. was to make monthly progress payments to Towerridge for work satisfactorily completed, minus a ten percent retainage. To that end, Towerridge submitted monthly payment applications to T.A.O. providing estimated completion percentages of the line-item tasks, and the appropriate percentage of each line item's scheduled value to which Towerridge was therefore entitled. Thus, ideally, upon Towerridge's completion of twenty percent of a line item, T.A.O. was to pay Towerridge twenty percent of that line item's scheduled value; when Towerridge had completed ninety percent of a line item it was entitled to ninety percent of the scheduled value, and so forth.[2]

Towerridge started work in June 1993. However, nearly from the beginning of Towerridge's performance, T.A.O. and Towerridge disagreed over whether Towerridge was working sufficiently productively and efficiently to complete its work on schedule. Timely completion of all portions of the project was of particular importance to T.A.O. because its prime contract contained a

---

[2] Actually, these payments would be less the ten percent retainage due upon Towerridge's completion of performance. However, because T.A.O. does not contest Towerridge's right to the retainage, we do not concern ourselves with this issue. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (issues not raised in opening brief deemed waived).

liquidated damages clause rendering T.A.O. liable to the government for $296.85 for each day completion was delayed beyond the scheduled completion date.

The parties dispute to whom blame for any delays or defects in Towerridge's performance should be attributed. Both note delays and disruptions caused by the government hampered completion of the overall project; however, they disagree on the extent the government's actions impaired Towerridge's ability to perform. Towerridge asserts it was at all times ready and able to meet its obligations under the subcontract, and that any delays in its performance were caused by T.A.O. and the government's failure to satisfy necessary preconditions to Towerridge's performance, such as clearing, grading and surveying. Additionally, Towerridge claims T.A.O. failed to properly schedule, supervise, and coordinate the project, and that any defects in its work were the result of T.A.O.'s inadequate project management rather than the fault of Towerridge. T.A.O., on the other hand, contends Towerridge repeatedly left the work site and failed to use sufficient workers to timely complete its work, even after T.A.O. repeatedly warned of the necessity for Towerridge to increase its workforce and speed its performance. T.A.O. also contends Towerridge's work was substandard, containing numerous defects requiring repair or reconstruction, further delaying

completion. Eventually, T.A.O. hired supplemental subcontractors to complete and correct the work Towerridge was to have performed.

Moreover, with the exception of Towerridge's first monthly payment application in July 1993, T.A.O. and Towerridge did not agree on the percentage of work completed by Towerridge. For example, the completion percentages set forth in Towerridge's second pay application resulted in a claim to T.A.O. for $110,817.00. However, T.A.O. only paid Towerridge $92,248.20. By the time T.A.O. terminated Towerridge, their opinions on the amount of work completed had grown further disparate. Towerridge's fifth, and final, pay application showed 87% completion of the concrete paving, 67% completion of the curb and gutter work, 82% completion of the sealant, and 53% completion of the asphalt paving. However, T.A.O. claimed Towerridge had actually completed only 73%, 59%, 73%, and 35% of each line item, respectively, and paid Towerridge accordingly.

Towerridge brought suit for the sums it claimed were due and owing for work allegedly performed. At trial, it asserted entitlement to $56,963.94. It reached this figure by subtracting the amount paid by T.A.O. ($245,875.82) from the amount, not including retainage, billed T.A.O. for work completed

($322,335.90), totaling $76,460.08. It then added $35,815.90 in withheld retainage, $3,133.00 for work performed under a change order modifying the original subcontract, and $677.00 for labor provided subsequent to its final pay application. Finally, it credited T.A.O. for $47,287.04 T.A.O. paid directly to one of Towerridge's suppliers and $11,835.00 T.A.O. paid directly to a sub-contractor of Towerridge, arriving at the final total of $56,963.94.

## II.  ANALYSIS

### A.  Damages Award

T.A.O. first asserts the district court erred in refusing to grant T.A.O.'s motion for judgment as a matter of law, in which T.A.O. claimed Towerridge was not entitled to recover under the Miller Act because it had failed to provide any evidence of sums owed for work performed under the subcontract. We review the district court's denial of T.A.O.'s motion *de novo*, *Haines v. Fisher*, 82 F.3d 1503, 1510 (10th Cir. 1996), applying the same standard as the district court, *see Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.), *cert. denied*, 117 S. Ct. 297 (1996). "It is appropriate for a trial court to enter judgment as a matter of law 'if during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Mitchell v. Maynard*, 80 F.3d 1433,

1438 (10th Cir. 1996) (quoting Fed. R. Civ. P. 50(a)).  "Under this standard, we may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."  *Haines*, 82 F.3d at 1510.  "We construe the evidence and inferences most favorably to the nonmoving party."  *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 976 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 684 (1997).

T.A.O. contends that to recover damages under the Miller Act, Towerridge must establish by substantial evidence actual work performed, actual overhead, or actual lost profits, for which it had not been paid.[3]  T.A.O. argues Towerridge failed to meet its burden of proof, essentially making a factual argument that Towerridge failed to prove any sums were justly due and owing under the subcontract.  We are not convinced by T.A.O.'s argument.

---

[3]  At times T.A.O.'s position on appeal seems to be that Towerridge is entitled only to payment for actual costs incurred in supplying labor and materials.  However, it later admits Towerridge may be entitled to overhead and lost profit, albeit only if proven with sufficient certainty, which proof it claims is lacking.  We agree with the district court that the appropriate measurement of damages is that percentage of the subcontract price equal to the percentage of work Towerridge completed, thereby ensuring both parties the benefit of their bargain.  *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986) (noting benefit of bargain to be "traditionally the core concern of contract law").  Indeed, T.A.O. admitted as much to the trial judge.

Under the subcontract, Towerridge is entitled to a percentage of the subcontract price equal to the percentage of work completed. Thus, whether Towerridge is entitled to recovery from T.A.O. turns upon the percentage of work completed. If the completion percentages asserted by T.A.O. are correct, then T.A.O. has paid Towerridge for its work and Towerridge is entitled to no further recovery; if the completion percentages asserted by Towerridge are correct, then T.A.O. has underpaid Towerridge and recovery is warranted.

At trial, Towerridge presented two primary forms of evidence supporting the accuracy of its asserted work completion percentages. First, it offered its pay applications to T.A.O., which set forth the asserted percentages. Roy Spradling, the Towerridge project manager who determined the percentages, testified as to their accuracy. Second, Towerridge pointed to the monthly pay applications submitted by T.A.O. to the government. The T.A.O. pay applications contained four line items apparently equivalent to those in the Towerridge subcontract: concrete paving, asphalt paving, curb and gutter, and paving sealants.[4] The

---

[4] The scheduled values of three of the four were identical or nearly so to those in the Towerridge subcontract: T.A.O. valued the concrete paving at $310,768.00, compared to Towerridge's $312,384.00; the curb and gutter work at $21,129.00, the same as Towerridge; and the asphalt paving at $77,000.00, $1,000 less than Towerridge. Only T.A.O.'s scheduled value for sealant was substantially different from Towerridge's: $21,700.00 versus $33,874.00.

completion percentages reported by T.A.O. in their pay applications conflicted with those asserted by T.A.O. at trial.

Construing all the evidence and inferences therefrom in the light most favorable to Towerridge, *see Doan*, 82 F.3d at 976, and mindful that assessments of the credibility of witnesses are within the exclusive province of the jury, *United States v. Davis*, 965 F.2d 804, 811 (10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993), we find the evidence presented by Towerridge was a legally sufficient evidentiary basis upon which a reasonable jury could find in Towerridge's favor. Accordingly, we affirm the district court's refusal to grant T.A.O.'s motion for judgment as a matter of law.

## B. Prejudgment Interest Award

The district court, in awarding Towerridge prejudgment interest, stated the allowance of prejudgment interest in a Miller Act case to be a matter of federal law. T.A.O. argues that, contrary to the district court's decision, applicable state law, here that of Oklahoma, controls whether an award of prejudgment interest is appropriate. T.A.O. asserts under Oklahoma law Towerridge is not entitled to such interest because the amount of damages was not liquidated or otherwise sufficiently certain prior to trial. *See* Okla. Stat. Ann. tit. 23, § 6 (West 1987).

"The decision whether ... to allow prejudgment interest rests within the sound discretion of the trial court.  Accordingly, the standard of review on appeal is whether the trial court abused its discretion in awarding ... prejudgment interest." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 n.43 (10th Cir. 1988) (citations omitted); *accord Malloy v. Monahan*, 73 F.3d 1012, 1019 (10th Cir. 1996).

> Under the abuse of discretion standard "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value."

*Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).  In this circuit, abuse of discretion is defined as "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'"  *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (quoting *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991)).

The district court noted that although prejudgment interest is ordinarily awarded in federal cases, it is not recoverable as a matter of right.  *See Malloy*, 73 F.3d at 1019 (quoting *Zuchel v. City & County of Denver*, 997 F.2d 730, 746

(10th Cir. 1993)). Accordingly, it employed the two-step analysis this court has previously set forth as appropriate for determining whether to award prejudgment interest in cases arising under federal law. "'First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest.'" *Malloy*, 73 F.3d at 1019 (quoting *Touche Ross*, 854 F.2d at 1257). The district court found the requirements of this test to be satisfied. It then applied the interest rate charged on judgments in Oklahoma to determine the amount of the award, stating interest at that rate would be appropriate to compensate Towerridge for the true costs of the money damage incurred.

In arguing Oklahoma law controls whether Towerridge is entitled to a prejudgment interest award, T.A.O. relies on *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987), in which we looked to state law in determining whether two Miller Act plaintiffs were entitled to an award of prejudgment interest. In *Western States* we interpreted the Supreme Court's pronouncement in *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116 (1974), that the Miller Act "'provides a federal cause of action, and the scope of the remedy as well as the substance of

the rights created thereby is a matter of federal not state law,'" to mean allowance

of prejudgment interest in cases arising under the Miller Act is a matter of federal

law. *Western States*, 834 F.2d at 1541. In so finding, we adopted the reasoning

of the United States Court of Appeals for the Fifth Circuit:

> Since prejudgment interest falls within the "scope of the remedy"
> available to a Miller Act claimant, it appears that under the authority
> of *F.D. Rich*, its allowance must be initially determined as a matter
> of federal law.
>
> Such a determination, however, merely leads us back to state
> law. Neither the Miller Act nor any other applicable federal law
> provides standards for the allowance of prejudgment interest. It
> therefore seems appropriate to look to state law "as a matter of
> convenience and practicality."

*Id.* (quoting *United States ex rel. Georgia Elec. Supply Co. v. U.S. Fidelity &

Guar. Co.*, 656 F.2d 993, 997 (5th Cir. 1981)); *see also, e.g., United States ex rel.

Bartec Indus., Inc. v. United Pac. Co.*, 976 F.2d 1274, 1279 (9th Cir. 1992);

*United States v. American Mfrs. Mut. Cas. Co.*, 901 F.2d 370, 372-73 (4th Cir.),

*cert. denied*, 498 U.S. 851 (1990). Though we explicitly disagreed with the Fifth

Circuit's blanket statement that no federal law bore on the issue, we "chose[] to

look to [state] law" for guidance whether to award prejudgment interest, and the

appropriate interest rate to apply. *Western States*, 834 F.2d at 1541 n.6, 1542-45.


However, we clearly, and repeatedly, stated prejudgment interest awards on

Miller Act claims are governed by federal law, not state law. *Id.* at 1541 & n.6,

-13-

1545. Indeed, in fixing the award granted we applied the interest rate stated in the state statute governing prejudgment interest at the time of our decision, rather than the statutory rate applicable at the time the debt was incurred as would have been appropriate under state law. *See id.* at 1544-45. We did so recognizing that because the prejudgment interest award was governed by federal law, we were free to choose any interest rate which would "fairly compensate the plaintiff for the delay in the receipt of payment." *Id.* at 1545 (quoting *United States v. West Virginia*, 764 F.2d 1028, 1031 (4th Cir. 1985), *aff'd*, 479 U.S. 305 (1987)). We deemed the then current state interest rate would accomplish that purpose. *Id.*

Thus, the district court was under no mandate to follow Oklahoma law in the instant case. Accordingly, its consideration of the issue under now well-established principles of federal law, *see, e.g.*, *Malloy*, 73 F.3d at 1019; *Frymire v. Ampex Corp.*, 61 F.3d 757, 773-774 (10th Cir. 1995), *cert. dism'd*, 116 S. Ct. 1588 (1996); *Zuchel*, 997 F.2d at 746; *Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1549, 1554 (10th Cir. 1992), *cert. denied*, 507 U.S. 1029 (1993); *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991); *Touche Ross*, 854 F.2d at 1257, was not an abuse of discretion, and will not be reversed.

**C. Award of Attorneys' Fees**

The district court found T.A.O. had acted in bad faith, and, premised upon that finding, awarded Towerridge attorneys' fees of $43,195.00. T.A.O. contends the district court erred in doing so, presenting three arguments. First, T.A.O. claims the court erred in finding T.A.O. acted in bad faith. Second, T.A.O. argues a finding of bad faith is not grounds for an award of attorneys' fees in a Miller Act case. Third, T.A.O. argues that even if bad faith can be grounds for such an award, the bad faith must be in bringing, maintaining, or defending a lawsuit; bad faith in conduct giving rise to the litigation is insufficient. Here, T.A.O. asserts the district court's finding of bad faith was premised solely on events preceding the lawsuit, and that the court made no finding the defendants engaged in any improper conduct related to the actual litigation. We accept T.A.O.'s third argument, holding an award of attorneys' fees may not be premised solely on prelitigation conduct. Finding no evidence T.A.O. acted in bad faith during the course of the lawsuit, we reverse the district court's award of attorneys' fees. Because we reverse the district court on those grounds, we need not, and do not, address T.A.O.'s first argument regarding the correctness of the district court's finding that T.A.O. acted in bad faith. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir.) (appellate court will not "undertake to decide issues that do not affect the outcome of a dispute"), *cert. denied*, 502 U.S. 878 (1991). Although generally we review a district court's award of attorneys' fees for an abuse of

-15-

discretion, we review its application of the legal principles underlying the award *de novo*.  *Harolds Stores*, 82 F.3d at 1553.

Initially, we note T.A.O.'s second argument, that a finding of bad faith in a Miller Act case does not warrant the charging of attorneys' fees, is patently meritless.  It is true the longstanding "American Rule," adopted by the Supreme Court in *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306 (1796), generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award.  *E.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *F.D. Rich*, 417 U.S. at 126.  The rationale underlying this rule, which often operates to prevent full compensation to injured parties, is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967).  However, "[t]he federal judiciary has recognized several exceptions to the general principle that each party should bear the costs of its own legal representation." *F.D. Rich*, 417 U.S. at 129.  One such exception allows the courts the inherent power to assess attorneys' fees when the losing party has "acted in bad faith,

vexatiously, wantonly, or for oppressive reasons," *id.*, which exception is commonly referred to as the "bad-faith" exception to the American Rule. Indeed, the Supreme Court has explicitly acknowledged the bad-faith exception in the context of the Miller Act, *see id.* at 126-129, as have numerous circuit courts, including our own. *See*, *e.g.*, *Western States*, 834 F.2d at 1542-43; *Tacon Mechanical Contractors, Inc. v. Aetna Cas. & Surety Co.*, 65 F.3d 486, 489 (5th Cir. 1995); *United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*, 935 F.2d 936, 942-43 (8th Cir. 1991); *United States ex rel. Leno v. Summit Constr. Co.*, 892 F.2d 788, 791 & n.3 (9th Cir. 1989).

Reaching T.A.O.'s third argument, we look to the source and purpose of the bad-faith exception to determine its scope. The exception derives from the inherent power of the federal courts to sanction conduct that abuses the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). Thus, "[f]ees awarded under the bad-faith exception are punitive in nature, but are designed to punish the abuse of judicial process rather than the original wrong [underlying the action]." *Shimman v. International Union of Operating Eng'rs*, 744 F.2d 1226, 1232 n.9 (6th Cir. 1984) (en banc), *cert. denied*, 469 U.S. 1215 (1985); *accord Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1502-03 (5th Cir. 1995) (en banc), *cert. denied*, 116 S. Ct. 706 (1996). Because the origin of the bad-faith

exception is the federal judiciary's necessary and inherent power to police proceedings before it, *see Chambers*, 501 U.S. at 43, 46, we find it unlikely that exception reaches to bad-faith conduct not occurring during the course of the litigation itself.

The majority opinion in *Chambers* implicitly supports our position. The Court premised its affirmation of a trial court's award of attorneys' fees for bad-faith conduct on a finding that "the District Court did not attempt to sanction petitioner for breach of contract, but rather imposed sanctions for the fraud he perpetrated on the court and the bad faith he displayed toward both his adversary and the court throughout the course of the litigation." *Id.* at 54. Although the Court therefore declined to state an opinion "as to whether the District Court would have had the inherent power to sanction [petitioner] for conduct relating to the underlying breach of contract" because that issue was not before it, it intimated such would not be that case: "the imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation*." *Id.* at 53, 54 n.16 (emphasis added).

Moreover, the four dissenting Justices explicitly asserted the federal judiciary's inherent power to sanction bad-faith conduct through the charging of fees does not extend to bad faith in the conduct on which the suit is based. Their dissents, to the extent relevant here, arose not from any disagreement over the rule regarding attorneys' fees for bad-faith litigation conduct, but rather from their opinion the district court had in actuality awarded attorneys' fees "for petitioner's flagrant, bad-faith breach of contract," rather than solely for bad-faith litigation conduct. *Id.* at 60, 72-73 (Scalia, Kennedy, JJ., dissenting). Justice Kennedy, joined by Chief Justice Rehnquist and Justice Souter, stated:

> it is impermissible to allow a District Court acting pursuant to its inherent authority to sanction such prelitigation primary conduct. A court's inherent authority extends only to remedy abuses of the judicial process....
>
> ....
>
> When a federal court, through invocation of its inherent powers, sanctions a party for bad-faith prelitigation conduct, it goes well beyond the exception to the American Rule and violates the Rule's careful balance between open access to the federal court system and penalties for the willful abuse of it.

*Id.* at 74 (Kennedy, J., dissenting). Justice Scalia "emphatically agree[d] with Justice Kennedy ... that the District Court ... had no power to impose any sanctions for petitioner's flagrant, bad-faith breach of contract." *Id.* at 60 (Scalia, J., dissenting). He further explained that the American Rule,

-19-

> "deeply rooted in our history and in congressional policy," prevents a court (without statutory authorization) from engaging in what might be termed substantive fee shifting, that is, fee shifting as part of the merits award. It does not in principle bar fee shifting as a sanction for procedural abuse.

*Id.* at 59 (Scalia, J., dissenting) (emphasis omitted) (quoting *Alyeska Pipeline*, 421 U.S. at 271).

We note our position is not a solitary one. Our sister circuits that have squarely addressed this issue have also held the exception does not reach purely prelitigation bad-faith conduct.[5] *Lamb Eng'g*, 103 F.3d at 1434-37; *Galveston County Navigation Dist, No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 359 n.13 (5th Cir. 1996) (citing *Guevara*, 59 F.3d 1496); *Horizon Air*, 976 F.2d at 548-50; *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1014 (11th Cir. 1985); *Shimman*, 744 F.2d at 1233; *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980); *see also* 6 James Wm. Moore et al., Moore's Federal Practice ¶ 54.78[3], at

---

[5] Although the Eighth and Ninth Circuits have propounded cases that could be construed as holding the exception to reach such conduct, *see Association of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 548-49 & nn.10, 11 (9th Cir. 1992) (citing such cases); *Yonker Constr.*, 935 F.2d at 942; *Richardson v. Communications Workers of Am.*, 530 F.2d 126, 132-33 (8th Cir.), *cert. denied*, 429 U.S. 824 (1976), they have since retreated from that position. *Lamb Eng'g & Constr. Co. v. Nebraska Public Power Dist.*, 103 F.3d 1422, 1435-36 & n.17 (8th Cir. 1997); *Horizon Air*, 976 F.2d at 549-50.

54-446 (2d ed. 1996) (stating the restrictive view we adopt to be the "better supported" one).[6]

In urging the exception is not limited to bad faith in the litigation setting, Towerridge relies primarily on *Vaughan v. Atkinson*, 369 U.S. 527 (1962), a case often cited as being the Court's initial declaration of the exception, *see Shimman*, 744 F.2d at 1229-30 (discussing development of bad-faith exception).[7]  *Vaughan* was a seaman's suit in admiralty against shipowners for maintenance and cure

---

[6]  We do not decide whether a court can consider prelitigation bad-faith conduct in deciding whether to award attorneys' fees under the bad-faith exception where litigation bad-faith conduct also exists; we merely hold the award of fees may not be premised *solely* upon prelitigation abusive conduct.  *See Lamb*, 103 F.3d at 1435 (A "'court may consider conduct both during and prior to the litigation, although the award may not be based solely on the conduct that led to the substantive claim.'") (quoting *McLarty v. United States*, 6 F.3d 545 (8th Cir. 1993)); *accord Horizon Air*, 976 F.2d at 549-50; *but see Chambers*, 501 U.S. at 46 (noting "the inherent power [to impose sanctions for bad-faith conduct] extends to a full range of *litigation* abuses") (emphasis added); *id.* at 61 (Kennedy, J., dissenting) (asserting the Court's affirmation of the award of fees was erroneous because the district court sanctioned the defendant *at least in part* for his underlying bad-faith breach of contract) (emphasis added); *Galveston County*, 92 F.3d at 359 n.13 (concerned only with the defendants' alleged abuse of the litigation process and disregarding the nature of the underlying tort).

[7]  Towerridge fails to cite *Hall v. Cole*, 412 U.S. 1, 15 (1973), in which the Court stated "that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."  In any event, we agree with the Sixth and Ninth Circuits that this statement, read in context, does not extend the bad-faith exception to prelitigation conduct.  *See Horizon Air*, 976 F.2d at 549-50 & nn.13-14; *Shimman*, 744 F.2d at 1232-33.

during the seaman's recuperation from an illness, and damages for their failure to pay same. *Vaughan*, 369 U.S. at 527-28. Under clear and longstanding law, the defendants had an unquestionable duty to supply such maintenance and cure while the seaman was convalescing. *See id.* at 531. Nonetheless, they failed to do so:

> [R]espondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither admitting nor denying it. As a result of that recalcitrance, libellant was force to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one.

*Id.* at 530-31. The Supreme Court allowed the seaman to recover his reasonable attorneys' fees. *See id.* at 529-30.

However, the theory upon which the Supreme Court awarded the fees is unclear. *See generally Guevara*, 59 F.3d at 1501 (discussing alternative rationales). Arguably, the Court punitively sanctioned the defendants for their "callous," "recalcitrant," and "willful and persistent" refusal to pay a clearly owed debt, and litigation of the same. *See Vaughan*, 369 U.S. at 530-31; *see also, e.g.*, *F.D. Rich*, 417 U.S. at 129 & n.17 (citing *Vaughan* as authority for the bad-faith exception to the American Rule). Alternatively, the award may have been a compensatory one, premised upon the seaman's entitlement under admiralty law to recovery of "necessary expenses" incurred in obtaining maintenance and cure.

*See id.* at 531; *see also Fleischmann Distilling*, 386 U.S. at 718 (indicating *Vaughan* was limited to calculating compensatory damages in admiralty cases).

In any event, careful examination of *Vaughan* through the lens of either rationale belies Towerridge's reading of the case. Obviously, if the award was compensatory it was not based upon bad faith and therefore *Vaughan* would be irrelevant to the instant matter. Moreover, even if the award was a sanction punishing defendants' bad-faith conduct, that bad faith lay in their "callous" refusal to pay a debt "plainly owed [the plaintiff] under laws that are centuries old," that is, their forcing the plaintiff to litigate though they lacked a colorable defense. *Shimman*, 744 F.2d at 1230-31; Moore et al., *supra*, ¶ 54.78[3], at 54-447. The Court did not affirm the award on the basis of bad-faith prelitigation conduct. Indeed, the trial court specifically found the plaintiff's illness did not result from negligence on the part of the defendants. *Vaughan v. Atkinson*, 291 F.2d 813 (4th Cir. 1961), *rev'd on other grounds*, 369 U.S. 527 (1962). Thus, there could have been no bad-faith conduct unrelated to the litigation.

In distinguishing *Vaughan* from the instant case, it is helpful to categorize and distinguish three forms of bad-faith conduct, one of which is not a basis for fee shifting though the other two lie within the bad-faith exception to the

American Rule. *See generally Shimman*, 744 F.2d at 1230-31 (delineating types of bad faith). First, bad faith occurring during the course of litigation that is abusive of the judicial process undisputably, at the discretion of the court, warrants sanction through the charging of fees. *Chambers*, 501 U.S. 32. The second category is "bad faith in bringing an action or in causing an action to be brought." *Shimman*, 744 F.2d at 1230; *see also, e.g.*, *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 476 (10th Cir. 1988). Where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is grounds for an award of attorneys' fees. *See* Moore et al., *supra*, ¶ 54.78[3], at 54-440. However, this second form of bad faith must be distinguished from the third category, bad faith in the acts giving rise to the substantive claim. As discussed above, such bad faith does not fall within the bad-faith exception. These distinctions are crucial to a proper understanding of *Vaughan*. The shipowners' bad faith was of the second variety, and therefore, assuming a punitive rationale, was grounds for fee shifting. Because *Vaughan* did not involve the third, prelitigation, category of bad faith, Towerridge's reliance upon it in contending the bad-faith exception reaches prelitigation conduct is misplaced.

In the instant case, the district court awarded Towerridge attorneys' fees based upon its finding T.A.O.'s prelitigation conduct was in bad faith and warranted fee shifting. The court stated:

> Plaintiff does not base its claim of bad faith solely on TAO's failure to pay a legitimately disputed amount. Plaintiff presented additional evidence of bad faith including evidence that TAO (1) refused to pay Plaintiff amounts justly due and owing after representing on payment applications to the United States that such amounts were due and owing to Plaintiff; (2) interfered with and obstructed Plaintiff's ability to perform its work; (3) interfered with and ultimately retained the benefit of the subcontract between Plaintiff and [a subcontractor of Plaintiff's]; and (4) improperly off-set amounts justly due and owing to Plaintiff against the costs to complete the subcontract.

Even assuming all such actions occurred and were in bad faith, the bad faith was not abusive of the judicial process; any bad faith lay solely in T.A.O.'s prelitigation acts which gave rise to Towerridge's substantive claim. Thus, the bad-faith conduct was not of either of the types which are within the scope of the bad-faith exception.[8] Indeed, Towerridge states as much in its brief to this court: "It is for pre-litigation bad faith that [Towerridge] makes its [bad-faith] exception claim to attorney fees." Moreover, at oral argument, Towerridge admitted it was not claiming T.A.O. exhibited bad faith during the course of the litigation.

---

[8] To the extent the district court's award could be seen as based upon a bad faith refusal to pay by T.A.O. through the assertion of a colorless defense, we do not find such a view to be supported by the facts.

Though statements in briefs or during oral argument are not necessarily binding admissions, we may consider them as such at our discretion. *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993), *modified on other grounds sub nom. Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (10th Cir. 1994), *cert. denied*, 115 S. Ct. 1691 (1995). Here Towerridge's statements simply further assure us any bad faith exhibited by T.A.O. was not of a nature warranting fee shifting under the bad-faith exception.

As did Justice Kennedy in his dissent in *Chambers*, *see* 501 U.S. at 76, we clarify that in no way do we condone any actions taken in bad faith by T.A.O. Nonetheless, we refuse to approve fee shifting under the bad-faith exception where the wrongful conduct consists solely of prelitigation bad-faith acts. Such an expansion of the bad-faith exception risks swallowing of the Rule, *see* Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. Rev. 613, 634 (1983) (expanding the exception to include bad-faith conduct that gives rise to a cause of action "could open the door to fee shifting in the ordinary tort or contract case"), and is not warranted by the exception's purpose, nor authorized by its source. Indeed, the Court has specifically warned not to "undercut the application of the American Rule" in Miller Act suits, which are "plain and simple commercial litigation." *F.D. Rich*, 417 U.S. at 130-31. We will

not do so here by allowing what would in essence be the very substantive fee shifting on the merits that the American Rule bars. *See Chambers*, 501 U.S. at 59, 74 (Scalia, Kennedy, JJ., dissenting). Accordingly, we reverse the district court's award of attorneys' fees.

### D. Admission of Settlement Evidence

T.A.O. objects to the district court's admission of evidence regarding a separate action between T.A.O. and the government, and settlement thereof. T.A.O. contends admission of the evidence violated Fed. R. Evid. 402, 403, and 408, warranting a mistrial. We review the trial court's admission of the evidence and its rejection of T.A.O.'s motion for mistrial under an abuse of discretion standard. *United States v. Davis*, 40 F.3d 1069, 1073, 1076, 1079 (10th Cir. 1994), *cert. denied*, 115 S. Ct. 1387 and 115 S. Ct. 1806 (1995); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 & n.15 (10th Cir. 1992).

The trial court allowed testimony establishing that T.A.O. submitted claims to the government for damages caused by governmental delay and disruption of the construction project, and that the government paid T.A.O. an undisclosed sum of money in settlement of these claims. It also allowed testimony implying the

government's delay and disruption of the project caused delay in Towerridge's work. T.A.O. makes a three-fold argument that any evidence related to these claims and their settlement was inadmissible.

First, T.A.O. argues admission of the evidence violated Fed. R. Evid. 402, which bars admission of evidence that is not relevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. T.A.O. contends the evidence was irrelevant to Towerridge's claim against it, which was for amounts due and owing under the subcontract. However, T.A.O. asserted during the trial that Towerridge's performance was inadequate because it was untimely, and that delay by Towerridge was one of the reasons it hired supplemental contractors to complete the work originally subcontracted to Towerridge. Thus, the evidence was relevant to show delay in Towerridge's performance was the fault of the government rather than Towerridge.

Second, T.A.O. claims admission of the evidence unfairly prejudiced T.A.O. by implying T.A.O. was a "deep pocket" and unjustly withheld recovery

from Towerridge to which Towerridge was entitled.[9]  Fed. R. Evid. 403 bars the

admission of relevant evidence if its probative value is substantially outweighed

by a danger of unfair prejudice.  After thorough review of the record, we cannot

say the district court abused its discretion in failing to hold Rule 403 prevented

admission of the controverted evidence.

Third, T.A.O. contends Fed. R. Evid. 408 barred admission of evidence

regarding the settlement.  Rule 408 provides that

> [e]vidence of (1) furnishing or offering or promising to furnish, or
> (2) accepting or offering or promising to accept, a valuable
> consideration in compromising or attempting to compromise a claim
> which was disputed as to either validity or amount, is not admissible
> to prove liability for or invalidity of the claim or its amount.
> Evidence of conduct or statements made in compromise negotiations
> is likewise not admissible....  This rule ... does not require exclusion
> when the evidence is offered for another purpose, such as proving
> bias or prejudice of a witness, negativing a contention of undue
> delay, or proving an effort to obstruct a criminal investigation or
> prosecution.

Rule 408 does not require the exclusion of evidence regarding the settlement of a

claim different from the one litigated, *see Broadcort Capital*, 972 F.2d at 1194,

though admission of such evidence may nonetheless implicate the same concerns

---

[9]  At oral argument, T.A.O. contended references to the separate action and settlement permeated the entire trial, causing T.A.O. irrevokable prejudice.  Review of the trial transcript does not show such references to have been so pervasive.

of prejudice and deterrence of settlements which underlie Rule 408, *see Orth v. Emerson Elec. Co.*, 980 F.2d 632, 639 (10th Cir. 1992). In any event, Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove "liability for or invalidity of the claim or its amount," and the evidence at issue here was not offered for that forbidden purpose. Rather, Towerridge offered the evidence to show it was not at fault for any delay and to show T.A.O. acted in bad faith. Accordingly, the district court did not abuse its discretion in allowing the testimony at issue, nor did it abuse its discretion in refusing T.A.O.'s request for a mistrial.

### E. Towerridge's Cross-Appeal

As previously noted, in response to a special interrogatory the jury found T.A.O. acted in bad faith. Towerridge cross-appeals the district court's failure to include that finding in its entry of judgment. Because we reverse the district court's award of attorneys' fees to Towerridge, which was the only element of damages dependent on a finding T.A.O. acted in bad faith, we need not address Towerridge's cross-appeal. *See Griffin*, 929 F.2d at 554.

**AFFIRMED IN PART** and **REVERSED IN PART**.