**Danielle RENNENGER, Plaintiff,**

v.

**MANLEY TOY DIRECT L.L.C.; Toy Network L.L.C.; SLB Toys USA, Inc. d/b/a Toy Quest; Toy Quest Ltd; and Aquawood, L.L.C. d/b/a Toy Quest, Defendants.**

No. 4:10-cv-00400–JEG

United States District Court,
S.D. Iowa, Central Division.

Signed 04/23/2015

Bruce E. Johnson, Robert C. Gainer, Cutler Law Firm PC, Jeremy Benjamine A Feitelson, Feitelson Law Firm, West Des Moines, IA, Bryan Patrick O'Neill, Dickinson Mackaman Tyler & Hagen PC, Thomas Andrew Newkirk, Jill M. Zwagerman, Newkirk Zwàgerman, P.L.C., Des Moines, IA, for Plaintiff.

Matthew Sease, Kemp & Sease, David H. Luginbill, Lindsay A. Vaught, Ahlers & Cooney, Des Moines, IA, for Defendants.

## ORDER

JAMES E. GRITZNER, Senior Judge
UNITED STATES DISTRICT COURT

This matter now comes before the Court on the Second Motion in Limine by Defendants Toy Quest, LTD., and Aquawood, which Plaintiff resists. The matter came on for hearing on April 17, 2015.[1] Attorney David Luginbill appeared for Toy Quest and Aquawood. Attorney Brian O'Neill appeared for Plaintiff. These Defendants move in limine to preclude evidence concerning settlement negotiations, corporate disclosure statements from other lawsuits, and the sale of a building in Indianola by an entity identified as The Toy Warehouse, L.L.C.

## SETTLEMENT DISCUSSIONS

On the record currently available to the Court, the claimed settlement discussions at issue arise in the context of a unanticipated telephone direct contact by Brian Dubinsky, President of Aquawood, with Plaintiff Danielle Rennenger on April 13, 2015.[2] While the specific content of the

---

1. The hearing was conducted without objection by telephone conference call because the Court was out of state when the motion was filed. Counsel for Manley Toy Direct L.L.C. and Toy Network L.L.C. could not be reached, but the pending motions did not impact those defendants.

2. There is no record that counsel for Defendants had any prior knowledge that Dubinsky would make this call, and the Court does not address any collateral issues.

telephone discussion remains somewhat elusive, there does not appear to be a dispute that the phone call occurred.

Mr. Dubinsky reportedly identified himself as the President of Aquawood and suggested his company would be responsible for any verdict in the pending case. The Court is informed Ms. Rennenger would testify as follows:

> Mr. Dubinsky then told her his name and said he represented Aquawood and that it was his company. He tried to convince her that he did not do anything wrong. Mr. Dubinsky told Mr. (sic.) Rennenger that her attorneys were going to paint him out to be a bad guy and that he was not a bad guy, but that is (sic) company is going to have to pay for it and he has never stepped foot in Iowa. At the very end of the conversation, he then said he could give her a gift, some money, or a car.

Pl.'s Resist. 2, ECF No. 297. Toy Quest and Aquawood argue the content of the telephone call constitutes settlement discussions and is therefore inadmissible under Federal Rule of Evidence 408.

Rule 408 states as follows:

(a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

  (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

  (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Because the specific scenario now before the Court fortunately rarely occurs, the Court must assess more generally the application of Rule 408, with due regard for whether there was a clear effort "to compromise a claim" under subsection (a)(2), and whether the evidence is probative on "another purpose" under subsection (b).

A. Offer of Settlement/Compromise Negotiations

Raybestos Products Co. v. Younger, 54 F.3d 1234, 1240 (7th Cir.1995), is instructive as to the factors a court should look at in determining whether evidence constitutes an offer of settlement and/or compromise negotiations. In Raybestos, the defendants sought to preclude a letter the defendants sent to the plaintiff asserting the letter was inadmissible evidence of statements made in compromise negotiations. In reviewing and affirming the district court's admission of the letter, the Seventh Circuit reasoned,

> To determine whether Younger sent his letter as an attempt to compromise a claim, or rather to intimidate the plaintiff, this court must look at the totality of the circumstances, carefully reviewing the contents of the letter and the timing of its delivery. Upon review of the record and the atmosphere in which this letter was sent, we conclude that Younger volunteered this letter and that no settlement arrangements or discussion had been initiated by Raybestos against

whom Younger was then making various defamation claims.

Id.

■ Although the Court is advised that separate settlement discussions had been arranged between the parties and the attorneys, the currently available record does not lend itself to an easy conclusion that Dubinsky was involved in compromising a claim. Given the surprise con-tact from the President of a defendant company to an individual plaintiff, in which an general offer of some accommodation was made in encouraging the Plaintiff to change her position, the contact appears more an intentional or inartful effort to influence the Plaintiff. While trial evidence could require a different response, the Court does not on the current record conclude Dubinsky's contact was in the nature of settlement negotiations as that concept can reasonably be characterized under the rule.

### B. Settlement Negotiations Admissible for Other Purposes

On the issue of whether settlement negotiations are admissible for other purposes, Dahlgren v. First Nat. Bank of Holdrege, 533 F.3d 681, 699 (8th Cir.2008), is instructive. At trial in Dahlgren, over the objection of the defendant bank (the Bank), the plaintiff offered testimonial evidence that two banks had similarly sued the Bank and that the Bank had settled those claims; the district court allowed the testimony that the Bank had settled those claims, but not the amount of the settlement. In affirming, the Eighth Circuit reasoned Rule 408 "only applies to evidence of compromise offered to prove liability for or the amount of the claim that was compromised, *whereas here evidence that the Bank settled claims by its successor lenders was offered to refute the Bank's claim* *that it was not liable for plaintiffs' tort claims....*" Id. (emphasis added).

The Eighth Circuit went on to state,

As Judge Learned Hand explained years ago, the admission of evidence that a defendant settled a claim with a third party arising out of the same set of operative facts carries the inherent risk that "such a concession of liability is almost sure to be taken as an admission of fault." Paster v. Pennsylvania R.R., 43 F.2d 908, 911 (2d Cir.1930). For this reason, even the circuits that construe Rule 408 narrowly view evidence of third party settlements skeptically. As the Tenth Circuit explained in Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir.1997), "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408" (internal citations omitted). We agree.

We review the district court's evidentiary rulings for abuse of its substantial discretion, reversing only if we conclude there was a prejudicial abuse of that discretion that affected the Bank's substantial rights. The Bank argues that it was prejudiced because the settlement evidence undermined its claim at trial that DCC was a satisfactory credit risk in early 2000, when FNBO and Adams Bank took over the credit. However, even absent the evidence of settlement, this claim would have been undermined by the admissible testimony of FNBO and Adams Bank witnesses that the Bank failed to disclose negative information about DCC and that the successor banks had sued the Bank for their losses in the DCC bankruptcy. The district court took steps to avoid unfair preju-

dice by excluding the amounts of the settlements and the settlement documents, and counsel for plaintiffs did not refer to the settlements during closing argument. Finally, and perhaps most importantly, the issue is now limited to the fraud claims of plaintiffs Erickson, Erickson Land and Cattle, Nelson, and Skane, Inc., claims we have affirmed because the Bank made negligent misrepresentations about DCC's financial condition after DCC was no longer a customer. In these circumstances, the admission of limited settlement evidence was not a clear and prejudicial abuse of discretion.

Id. at 699–700.

In Kraft v. St. John Lutheran Church of Seward, Neb., 414 F.3d 943, 947 (8th Cir. 2005), the Eighth Circuit affirmed the district court's admission of settlement negotiations reasoning the

> evidence [was] admissible for other purposes, however, "such as proving bias or prejudice of a witness [or] negativing a contention of undue delay." The district court did not abuse its discretion by considering Kraft's settlement negotiations with the church for the purpose of proving Kraft's knowledge of a causal connection between his injuries and the abuse.

(second alteration in original) (quoting Fed. R. Evid. 408).

■ The so far undisputed information the Court does have about the telephone call, namely that Dubinsky allegedly made admissions regarding Aquawood/Toy Quest's responsibility for any verdict, and therefore the relationship to Manley Toy Direct, those statements do not go to an element of Rennenger's claims of sexual harassment, sex discrimination, and retaliation, and therefore would appear admissible. See, e.g., Larson Mfg. Co. of S. Dakota v. Conn. Greenstar, Inc., 929 F.Supp.2d 924, 933 (D.S.D.2013) ("But Rule 408 ex-

cludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the *claim under negotiation*. To the extent that the evidence is offered for another purpose, and to the extent that either party makes an independent admission of fact, the evidence is admissible." (emphasis added) (quoting Vulcan Hart Corp. v. N.L.R.B., 718 F.2d 269, 277 (8th Cir.1983))). The telephone call appears to be admissible under the other purposes exception of Fed. R. Evid. 408.).

Based upon the record now available to the Court, the motion will be denied as to claimed settlement negotiations.

## CORPORATE DISCLOSURE STATEMENTS FROM OTHER LAWSUITS

The issue here is whether Aquawood and its representatives have inconsistently reported whether Aquawood has a parent corporation, and whether that issue may be pursued in a challenge to the credibility of Dubinsky and Aquawood's general manager, Peter Magalhaes, at trial. The disclosure statements at issue apparently were filed in 2008, 2009, 2011, and 2012 in California Federal Courts by attorneys representing Aquawood. The documents raise issues under Federal Rules of Evidence 402 and 403.

■ Because of an incomplete record regarding the circumstances under which the documents were filed in the California proceedings, and a concern over jury confusion in this case, the Court finds that the documents are not admissible. The documents could be used to refresh the recollection of a witness on the question of whether a witness has been personally involved in making a prior inconsistent statement regarding corporate structure. Accordingly, the motion in limine will be granted in part and denied in part.

## SALE OF A BUILDING IN INDIANOLA

Plaintiff seeks to introduce evidence of the sale of a building in Indianola, Iowa, by The Toy Warehouse, L.L.C. in January of 2015 for $6.7 million. It is urged the information surrounding this sale demonstrates an untruthful response by Dubinsky in his deposition on September 29, 2014, in regard to his knowledge of The Toy Warehouse. Plaintiff directs the Court to the discussion on page 67 of that deposition. However, the testimony in the deposition does not provide a sufficient basis for introduction of this evidence under either Rule 402 or 403. Therefore, the motion in limine on this issue will be granted on the current record. The issue will be revisited should trial testimony provide a basis for the credibility challenge Plaintiff proposes; however, the Court would not anticipate evidence regarding the sale price for the warehouse.

## CONCLUSION

Based upon the foregoing discussion, the Defendants' Second Motion in Limine, ECF No. 293, must be **denied in part and granted in part**. The motion is denied as to claimed settlement negotiations. The motion is granted as to the corporate disclosure documents from other lawsuits, but denied to the extent those documents may be used with a witness to elicit testimony regarding prior inconsistent positions. The motion in limine is granted at this time as to the sale of the building owned by The Toy Warehouse in Indianola, Iowa.

**IT IS SO ORDERED.**