**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMERICAN FIDELITY ASSURANCE
COMPANY,

     Plaintiff - Appellant,

v.

THE BANK OF NEW YORK MELLON,

     Defendant - Appellee.

No. 18-6210
(D.C. No. 5:11-CV-01284-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **EBEL**, and **HARTZ**, Circuit Judges.
_____

This is a dispute between American Fidelity Assurance Company ("American

Fidelity"), an investor in residential mortgage-backed securities ("RMBS"), and the

Bank of New York Mellon ("BNYM"), the trustee for those securities. American

Fidelity lost millions of dollars in the wake of the 2008 financial crisis, and it seeks

to hold BNYM accountable for those losses.

BNYM's duties as trustee were governed by a contract called a Pooling and

Service Agreement ("PSA"). American Fidelity sued BNYM in 2011, alleging

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

breach of contract, breach of fiduciary duty, and a violation of the Trust Indenture Act.[1]  BNYM moved for summary judgment and the district court granted that motion.  The district court concluded that the breach of contract and breach of fiduciary duty claims both failed because American Fidelity had not shown an "Event of Default" that was known to BNYM, as required under the PSA to trigger additional contractual and fiduciary duties.  The court also concluded that the Trust Indenture Act does not apply to the certificates at issue.  American Fidelity challenges both of those rulings on appeal.  Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I.    BACKGROUND

Between 2004 and 2009, American Fidelity purchased investment-grade certificates in dozens of securitization trusts containing pools of residential mortgage loans.  Those residential mortgages were sold and serviced by non-party Countrywide Financial Corporation and its subsidiaries.  BNYM served as securitization trustee.

---

[1] American Fidelity also brought a claim for negligence against BNYM.  At oral argument American Fidelity represented that it only challenges the district court's rulings as to its claims for breach of contract, breach of fiduciary duty, and a violation of the Trust Indenture Act.  Counsel for American Fidelity was asked: "Let's assume you don't prevail on the Event of Default part, what are your remaining, if any, claims?  You have the Trust Indenture Act; do you have any other claims?"  Counsel responded, "No."  Therefore, we restrict our discussion to whether American Fidelity has shown an Event of Default known to BNYM, and whether the Trust Indenture Act applies to the certificates at issue.  See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 769 (10th Cir. 1997) ("Though statements in briefs or during oral argument are not necessarily binding admissions, we may consider them as such at our discretion.").

Securitization enables lenders to turn mortgage loans into cash. The process generally involves four entities: Seller, Depositor, Master Servicer, and Trustee. The process begins when the Seller aggregates and sells a portfolio of mortgage loans to the Depositor. The Depositor then sells the mortgages to a trust. The trust pays for the mortgages by issuing certificates of beneficial ownership, which the Depositor then sells to investors. The certificates entitle holders, like American Fidelity, to a share of interest and principal payments from the mortgage borrowers. The Master Servicer is responsible, in part, for collecting principal and interest payments from borrowers, transferring collected funds to the Trustee, and foreclosing on properties with defaulted loans. The Trustee performs specified functions in administering the trusts and is responsible for delivering funds to certificateholders.

The certificates are governed by Pooling and Service Agreements ("PSAs")—detailed contracts involved in creating and managing the certificates and underlying loans. Under the PSA, the Trustee has certain baseline, generally ministerial, obligations. The Trustee incurs additional obligations if an Event of Default occurs and is known to the Trustee. Although six events can qualify as an Event of Default under the PSA, American Fidelity only invokes the Event of Default that occurs when (1) the Master Servicer fails to perform under the PSA, (2) that failure materially affects the rights of certificateholders, (3) the Master Servicer receives

notice of its failure, and (4) the Master Servicer does not cure that failure within 60 days.[2]

If an Event of Default occurs and is known to the Trustee, then the Trustee incurs a duty of care and must satisfy additional obligations under the PSA. Under § 8.02(viii) of the PSA, "the Trustee shall not be deemed to have knowledge of an Event of Default until a Responsible Officer of the Trustee shall have received written notice thereof . . . ." (Aplt. App. 606).

## II.  DISCUSSION

"We review a district court's grant of summary judgment de novo, using the same standard applied by the district court pursuant to Fed. R. Civ. P. 56(a)." Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, "we view the evidence and draw reasonable

---

[2] Section 7.01(ii) of the PSA states:

[A]ny failure by the Master Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement . . . which failure materially affects the rights of Certificateholders, that failure continues unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates . . . .

(Aplt. App. 601).

4

inferences therefrom in the light most favorable to the nonmoving party." T.D. v. Patton, 868 F.3d 1209, 1219 (10th Cir. 2017). On issues for which the nonmovant bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to its case in order to survive summary judgment." Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1170 (10th Cir. 2010) (internal quotation marks and alterations omitted). "Failure of proof of an essential element renders all other facts immaterial." Id. (internal quotation marks and alterations omitted).

## A. Breach of Contract and Breach of Fiduciary Duty

In support of its claims for both breach of contract and breach of fiduciary duty, American Fidelity argues that BNYM's additional duties under the PSA were triggered by an Event of Default that was known to BNYM. As described above, a trustee is only deemed to have knowledge of an Event of Default if the trustee receives "written notice thereof." (Aplt. App. 606).

American Fidelity has not shown that BNYM received written notice of an Event of Default. In arguing that BNYM did receive written notice of an Event of Default, American Fidelity cites only one letter. The letter, dated October 18, 2010, was sent by a group of certificateholders, via the law firm Gibbs & Bruns LLP, to BNYM and the Countrywide subsidiary serving as Master Servicer for a group of

5

trusts (the "Gibbs & Bruns Letter").[3] The Gibbs & Bruns Letter served as a notification that Countrywide was failing to perform its duties as Master Servicer, and that those failures were materially affecting the rights of certificateholders. The letter cautioned that if the failures remained uncured after 60 days, the failures would ripen into Events of Default. In other words, no Event of Default had yet occurred, and therefore the Gibbs & Bruns Letter could not have provided written notice to BNYM of an Event of Default.

Absent written notice to BNYM of an Event of Default, nothing triggered BNYM's heightened contractual and fiduciary duties under the PSA, upon which American Fidelity seeks to rely. Therefore, the district court correctly concluded that BNYM is entitled to summary judgment on American Fidelity's breach of contract and breach of fiduciary duty claims.

**B. Trust Indenture Act**

American Fidelity also brought a claim against BNYM under the Trust Indenture Act ("TIA"). However, the TIA exempts some investments from its scope, including "any certificate of interest of participation in two or more securities having substantially different rights and privileges." 15 U.S.C. § 77ddd(a)(2). The district court, citing Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon, 775 F.3d 154 (2d Cir. 2014) for its

---

[3] The Gibbs & Bruns Letter only concerned two of the 21 trusts at issue in this case.

well-reasoned analysis, concluded that the RMBS certificates at issue here fall within that exemption. We agree.

In Retirement Board, the Second Circuit noted that the certificates at issue had "different obligors, payment terms, maturity dates, interest rates, and collateral." 775 F.3d at 169. The court therefore concluded that the certificates qualified under the TIA's exemption for securities "having substantially different rights and privileges." § 77ddd(a)(2). The district court reasoned that the certificates in this case are virtually identical to those at issue in Retirement Board, and the court therefore chose to follow the rationale set forth in Retirement Board.[4] We agree and we affirm the district court's conclusion that BNYM is entitled to summary judgment because the TIA does not apply to the certificates at issue here.

---

[4] American Fidelity argues that the Second Circuit's holding in Retirement Board was in error because in Reves v. Ernst & Young, 494 U.S. 56 (1990), the Supreme Court held that mortgage loans were not securities under either the 1933 or 1934 Securities Acts. BNYM responds that the Reves holding was not categorical; the Court there simply concluded that mortgage notes typically should not be regarded as securities under the Exchange Act or the Securities Act. We agree with the Second Circuit that "while it might be incongruous to apply the registration provisions of the Securities Act or the anti-fraud provisions of the Exchange Act to residential mortgages, there is nothing odd about classifying residential mortgages under [the] TIA." Retirement Board, 775 F.3d at 169.

## III.    CONCLUSION

We AFFIRM the district court's order granting BNYM's Motion for Summary

Judgment.

Entered for the Court


David M. Ebel
Circuit Judge